First case is 0A3607 Elizabeth Gutzstein v. City of Evanston Good morning, your honors. Grant Farrar on behalf of defendant Apollon, City of Evanston Good morning, justices. Francis Patrick Murphy with Corcoran Demetrio for Betsy Gutzstein Good morning. William Gibbs also on behalf of Betsy Gutzstein Plaintiff, counsel for plaintiff, you may proceed when you're ready. Appellant, I mean. Difference. Thank you, your honors. Not always, but sometimes. May it please the court, your honors. On behalf of the City of Evanston, what I would like to impress upon the court today is the issues that are outlined in our brief. I would like to reserve two minutes for rebuttal as necessary, your honors. May it do so. With respect. You can, I think, safely keep in mind that we studied your briefs. I'm not advising you to omit any discussion of the facts because when we read your briefs, we also read several other sets of briefs and associative memory is a little easier than initial recall, so we could probably benefit from some reminders of the fact. But don't, you don't have to treat it as if this is our first exposure to your case. Absolutely, and I appreciate that, your honors. With respect to the facts, I would simply like to emphasize the issue that there's no reasonable inference that the trial court could have derived from Mr. Crabtree's testimony such that the directed verdict. Well, let's see if we need Mr. Crabtree's testimony. What do we have by way of ordinances as to where garbage disposal units should be placed in Evanston? What do the ordinances provide? There are no specific ordinances that specifically state in this instance that a owner must place the garbage. Well, let's not talk about must place, but may place, and also ordinances that would determine whether the failure to comply either with the curbside placement or the alley placement would result nevertheless in a garbage pickup. Well, with respect to that issue, the residents of Evanston are required to place their garbage cans in a manner such that the city can access them, such that garbage removal can be effectuated. Is there a specific reference to the alleyway as one likely spot? Your Honors, with respect to the alleys, if the property line borders an alley, it's suggested. It's not required. It's suggested that the can be placed on the alley line. What is the actual wording? Alley property line? Along the boundary line, property line. It doesn't say alley? I thought it said alley property. I thought it was a combination. The wording as you read through the ordinances is a little nonspecific, but I think that in this case. Is it in the briefs? The actual language? No. I don't believe so, Your Honors. Okay. With respect to, again, how Mr. Crabtree testified on this point. I'd like the focus for the moment still to be on the ordinance before we go to any broader area of discussion. Because as far as I'm concerned, it may be a linchpin of sorts in the disposition of this case. It's not as specific as. What does it say? Judge, it's a situation where the ordinance itself, the language is just not. Does it mention the word alleyway? Yes, it does. It also mentions in the instances of parkways. Also parkways and curbside. And curbside is conditioned on certain location of the property line? Right, of the curb itself, yes. This case doesn't involve the curb. Their property isn't on the curb. Right? Correct. All right. But it also is available for those. I'm also aware, just as far as I'm concerned at least, and for the moment and subject to what your opponents will say, that we might presume that permitted does not mean intended, and necessity does not mean permitted or intended necessarily. We're quite aware of the black letter rule with respect to that. And you touched upon it exactly, your honor. With respect to how the ordinance, in terms of shedding light and clarifying how that applies to the black letter, it's simply not as clear as it might otherwise be. The situation remains, though, is that with respect to garbage pickup, there are permitted uses, access to the alley along the line for, as in the case of Miss Gustine, to dispose of her trash, such that the trash will then be picked up by the city. Okay. I'm also going to see if we can get some degree of commitment to the question as to whether this is an issue of law or an issue of fact or a mixed issue. With regard to a determination as to whether a pedestrian is an intended user, which is a way of describing the 102 duty that would ensue in that event, is that an issue to be decided as a question of fact or as a question of law? Your honor, that is an issue to be decided as a question of law pursuant to the de novo standard. What if the determination hangs on testimony, which it may under hypothetical situations. You've attempted, at least for the moment, to involve, what is his name, Glenbrook? Mr. Crabtree. Crabtree. Okay. Crabtree's testimony, which may or may not be a factor here, depending on what the predominant factors are. If, for example, an ordinance said we want you to use the fact that 10 other officials are going to testify to alternative uses and so on, it's not going to make a difference. But in some instances, perhaps, individual testimony is going to be a factor, if not the dispositive factor. But does that also get decided by the judge or is that a question of fact? Well, your honors, I think that these issues were considered in the other alley cases cited in our brief. Khalil and Thomas necessarily looked to the testimony and the citing of those particular plaintiffs in those cases and found that no duty, that the pedestrians in those cases were not. They looked to the testimony, but did they say that that testimony postures an issue of fact for a trier of fact or is that still going to be an issue of law? For instance, there may be factual issues in the interpretation of a contract, which are nevertheless going to be decided by a judge. On the other hand, there are certain issues involving the establishment of a duty under a contract that may be relegated to a jury. Is that been something that you've focused on? Yes, and I think you need look at the Thomas case. There was a specific statement in there by the Cicero supervisor that said alleys were easements. Of course, there's no such testimony in the record before your honors today in this case. But that court there still determined as a matter of law that the plaintiff in that case was not an intended user of the alley. Well, he wasn't within the safety island is what Justice Wilson said. But implying more than subtly, frankly, although Justice Wilson is capable of very subtle implications, this one is pretty overt, that where the garbage unit is involved, that the pedestrian in accessing to and from that garbage disposal unit would be an intended user. It's only when he deviates from that path that his status changes. Well, your honors, I would respectfully submit that you need to take that line of reasoning and also still consider the duty issue, the foreseeability of the injury if we're talking about a safe harbor, the magnitude of imposing the burden upon a city. Well, but then we would treat the city simply if we're talking about the duty aside from the question of is he an intended user. If we're talking about the city's duty under 102, the city becomes another defendant. And we always are concerned about proximate cause. And proximate cause always goes through a dual analysis, first by the judge, then by the trier of fact. What about these alleys? They're gravel, are they not? Correct. Now, is there any, does that indicate anything to us? Well, I think it does, your honor, to the extent that in the record there are references to the volume of unpaved alleys in the city of Evanston. There's quite a few miles. Well, I thought that generally speaking the alleys are not paved in Evanston. Correct. So they are gravel. Well, they're gravel. In some instances there will be some sort of macadam type surface mixed in with dirt. What does the grading mean that they do? They just level it off? Essentially. Well, sometimes it will be with asphalt fillings or tillings. Sometimes it will be with loose limestone. Essentially it's a situation where it's a determination, it's a discretionary determination by the Public Works Department what material will work best. And it's also with the understanding, your honors, that these unpaved alleys are going to, through weather conditions and traffic use, degrade. And that's why they must be regraded. Were there any, other than the ordinance, was there any other indication that you can see? I mean, this wasn't a situation like the street parking where there's signs that say, you know, you can park here, you can't park here. Other than the ordinance, do you think there was any other indication of any intent by Evanston to be permitting? I don't think that there is any specific evidence of intent in the record outside the fact that Mr. Crabtree said, look, we want our residents to be able to place the cans in an area where we can access them. Because obviously... It has to be, though, at the alley property line. Now in this case, they had a fence, did they not? Yeah. And were there, the cans were on the side of the fence that was actually part of the alley. True? Correct. Do you, does the testimony relate how high that fence was? Your honors, I believe the fence was somewhere on the order of six to seven feet. But this isn't really a situation where they could just drop their garbage over the fence, right? No. And they also didn't have the ability to put them on the path. The slab, yes. I wouldn't rest too comfortably with that notion as far as I'm concerned. Is there some sense that everyone who has a property like the plaintiff here has the right to at least enter the area of the alleyway to dispose of their garbage? They have the ability to site the cans such that pickup will be effectuated. But I would also... Well, doesn't that then give the suggestion of an intent that everybody in Evanston has the right to go in the immediate area of the alley property line to dispose of their garbage? I think that you need to look to the reasoning of the Montana case, which said in a similar situation in an alley, unless there are signs allowing a truck to unload, we're not going to find intent existed. There are no signs in the Evanston alleys. There's nothing in the record that says you must... Wait a minute. How can you compare the truck unloading to garbage disposal? What's the analogy there, financially? It ties into the fact that alleys are roadways and they are used as such. Unloading a truck. What was that truck in that case doing? Do you recall? The Montana? Whatever? He was unloading some cargo, I believe, Your Honor. Right. How do you compare that to the village and their garbage pickup and the ability of the property owner to dispose of their garbage? I mean, I don't see how the private trucking company who wants to unload in an alley is in any way analogous to the property owner being able to put out their trash. Well, it goes to the issue of how historical use and the use of an alley doesn't necessarily... Permanent versus intended use. Exactly. However, I think that two things. Yes. With regard to the question of access, whether the fence is high or the fence is low, whether you can drop the flower or whatever, the weed that she was carrying over the fence or through the fence, or whether they could park on the concrete embankments. My resistance to that is to the extent that would one differentiate between a parked automobile and the right that the Supreme Court has sanctioned and the lines of cases that say that parkers are intended users of the roadway insofar as getting to and from their car. What if instead of the curb there is a private driveway accessing the house that they're visiting or their own house? Do you think that's going to make a difference once they determine that streets are available and that the drivers are invited to use the curbside parking facility? I think that would be a very... It would be not a well-taken attempt to expand the coverage of the law and it would essentially eviscerate immunity. If anything, that would, whether they could have parked on the concrete embankment or somewhere else under the circumstances, might conceivably raise an issue of contributory fault. Maybe. But not duty. Well, but I think it's appropriate to implicate the duty issue when you also consider, as some of your honors did in the Montana case, the cost of imposing a burden upon a municipality to maintain areas with no limitations. Well, SISC treats that. Justice McMurrow and SISC obviously discuss this. Yes, and in the SISC embargo... And that became the line of resistance to curbside parking as well. I know because early on I decided the case the other way, until I was straightened out by the Supreme Court, let's say. But expense is a policy factor. Obviously one should not be free and easy in drawing the state or the government into expensive duties of maintenance. But there was no hesitancy to do that with regard to curbside parking. If what you're going to offer a tenant is the alleyway for his garbage, and in this particular case it's accentuated by the fact that curbside parking would not have even been available, that the expense factor becomes higher up in the horizon. Well, your honors, I would respectfully submit that if the expense factor is going to be taken into account, that that's the provenance of the legislature, and that they would need to speak to the issue of mandating... of the municipality to invite that use. Well, but... And how are you going to read that intent? Obviously signs saying, please make sure that your access to your garbage in the alleyway would be clarifying. But if the ordinance says, we're not going to pick your garbage up unless it's in the alley, well, then the question is, how is that garbage can going to get there if not through use? And isn't that an adequate substitute for signage or extrinsic indications of intent? I still think, your honors, that the issue of intent must be measured from the city's perspective, but you also need to consider the fact that the plaintiff in the record testified, along with her companion, that it was their decision where to site the garbage cans. Does the ordinance forbid or does it require that they move these things once they're in place? No, it does not. So they can leave their garbage cans and whatever else recycling there permanently, is that true? Well, they can... It's up to the residents to site it for access. They can move it down the line, they can move it up the line, they can move it around after the garbage has been picked up, and that's quite... Okay, so then if they can do all these things, isn't that a further indication that they have a right to be out there within the immediate area of their garbage? We're not... Well, I think that goes to permissive use, your honor, and no one is disputing on behalf of the city that she's a permitted user. Well, frankly, the aspect of permissive use would go down a little easier if you were going to use the alley as a place to paint a portrait. But are you really a permissive user of the alley if your alternative is to retain your garbage and violate countless ordinances for retaining garbage? But, your honor, the plaintiffs in this instance had the ability to place the garbage cans on the pad without violating... Does it matter that the judge reasoned wrong when he came up with his decision as a matter of law? If he said it was necessary or required, does it matter that he used the wrong reasoning? Absolutely it does. Why? For our purposes, do we care what reasoning he reached or do we look at whether on our de novo review there was an indication of intent that a person using the alley to put their garbage out there was intended? I think with respect to the issue of de novo review, you certainly can consider the issue on the merits itself, but I think it's also instructive just to note that the trial court's reasoning was somehow short-circuited in a lot of ways. And I think that this issue of intent really must also consider Mr. Crabtree. It was up to the plaintiff where to site the cans, and Mr. Crabtree clearly testified that we do not maintain alleys for purposes of pedestrians using them as walkways or we do not maintain them for purposes of trash pickup. We access the cans, we empty the cans, but we don't maintain them, we don't regrade them such that people can walk in them unfettered and do whatever they need to do as permitted users. That's contradicted by Crabtree's testimony, isn't it? Because what he said is first we regrade the alleys, then we pay attention to individual compliance. Well, that goes to discretion. So evidently the City of Evanston is more conscientious than you're trying to portray it in this unappellate review. Well, Your Honors, I think that they're utilizing their discretion and they're balancing their needs of the Public Works Department in addressing issues that crop up, which is another reason why Mr. Crabtree should have been entitled to discretionary immunity for his discretionary decisions. Well, what discretionary decision did he make in this case? Well, with respect to this case, I believe he testified that the regrading program was going to be in effect during calendar year 2004, that it had occurred in years past. Wasn't that really ministerial? Every couple of years did he say? What did he say? Well, I don't believe he could specifically state what year prior to 2004 this had been regraded, but I believe in the record he had testified that it was regraded sometime in March or April 2004. Did he testify? Go ahead. I'm sorry, Your Honor. But the fact of the matter is with 44 miles of unpaved alleys, it was up to him to decide which alleys had to be regraded. Obviously, due to manpower constraints and funding constraints, you can't regrade everything all at once. Was he the sole person that decided which alleys are regraded, or is there more than one person for the City of Evanston that goes around and decides? Well, Your Honors, if you'll recall from the record, I believe he testified that in the Public Works Department he was a supervisor. He had been a supervisor for eight years as of 2004, that there were two individuals above him in the hierarchy, and there were 24 individuals below him, either subordinate or reporting to him. And I would respectfully submit that you look at the totality of the factors, that he was the supervisor in a Public Works Department, not the paving department. He had many other duties and many other responsibilities that he had to discharge. So I would submit that his actions in determining what alleys had to be regraded,  and balancing those competing interests, those are things that were already considered by this Court in other cases, such as SCARS. Did all the motion judges, up to the point that this actually went to a jury, did everybody think that these were factual questions? The immunity section, and also whether or not she was an intended user? Well, Your Honor, on that particular issue, I would respectfully have to say that on the motion judge side of it, I'm not aware. I was not of record at that point in time. I simply can't state with you. But at the trial level, here the judge had first indicated it was going to be a factual question. And you had already, you were not at the trial level? I was not, Your Honor. Well, did the attorney for the City of Evanston argue that it was a legal question? Correct. Before and after asking for a judgment NOV? Exactly, Your Honor. And did the other side? Well, we can ask them. At some point he said it was a factual question. Correct. Now, is your position that it can never, ever be a question of fact? Whether there was an intent here? What I'm saying, Your Honor, is that in line with the cases cited in our brief, that it's necessarily an ad hoc determination that while it is a question as a matter of law to be decided, it cannot necessarily be divorced from the realm of the facts and testimony in the case. But, yes, it is still a matter of law determination. But it's on an ad hoc basis. What about your affirmative defense, the immunity? Do you believe that that should have gone to the jury? Affirmative defense, I think, is a question of law. And the reason why it was stricken is, frankly, I can't. Is it your position that even if 102 would apply as the court determined, namely that the plaintiff was an intended user, that the defense of that being a discretionary act would still have to be analyzed? Yes. Yes. By the court? Well, see, that's where it got a little unclear in the trial proceedings. But I think that it should have gone, it should have survived the striking of it, and the jury is entitled to consider that, also tied into the possible contributory negligence. And what would the, what act here involved in this cause of action would be the discretionary one that would invoke the immunity provision? The decision by Mr. Crabtree on which alleys had to be regraded at what time and with what funds and men. And that is an issue that, again, goes to the SCARSA and the other cases cited in our brief. Once you have Roble putting that discretion in the hands of the actual laborer who fills the pothole, do you think that this would then be subject to the discretionary choice or disposition of the one who plots out the priorities of repair? Absolutely. The person who looks at the map. I say that's a softball to you, but I'm throwing it out to you. Absolutely, Your Honors. If you have the person who has to look at the map and say, okay, crew number one, you have to go to this quadrant of the city and fill in X number of potholes, that is certainly discretionary. And absolutely, in Roble, the individual laborers were found to have discretionary immunity. I completely agree with Your Honor's analysis. Let me ask you a question about that. The city of Evanston is run by aldermen. They make the policy, do they not? They are. It either yes or no. It either is or they don't make the policy. Yes. All right. I mean, I believe all village boards and aldermen make policy. That's their job. And in that policymaking position that they have, do they decide how much money to spend on repairs? They've promulgated the budget. It's either a yes or no answer. Yes. It either is or they don't. Yes. All right. And after they make that decision, do they decide how to spend the money, which alleys to do? And if you don't know, say I don't know. Your Honors, on a case-by-case basis, it may determine on which alley is receiving the most complaints, which alley is... No, my question is not how they do it. It's whether they do that, whether the aldermen decide which alleys are to be repaired. No. Okay. You're sure? There's always exceptions, but in a general basis... There's nothing in the record to tell us one way or the other. Was Crabtree the guy, the delegate to whom these decisions were delegated? Yes. And do you know what decisions were delegated to? Well, I think the decisions are what materials to use, which alleys to use, which alleys to regrade, and when. Well, filling potholes in Roble was... I'm sorry. Go ahead. See, here's the problem. Is it the village fathers who make the decision, which alleys, or was it Crabtree who made the decision? I don't think there's anything in the record that tells us either way. It wasn't a point that was specifically brought out at trial, but obviously... Okay. So it's not there. So we don't know. But we do know one thing. There's no records here that shows that this alley was in any way that work was performed there when it was... or the last time work was performed. I believe it's simply not clear from the record. No, it's not clear. Yes. It's not clear whether work was done there, whether work was intended to be done there, or anything concerning work to be done. Isn't that true? I agree, Your Honor. Okay. Well, what was the testimony about 2004 and regrading? I believe Mr. Crabtree had a general recollection, but he specifically could not recall whether... What was his general recollection? I believe he testified that as of March 2004, it was either scheduled to be regraded and it was going to be regraded on or about the July 4th parade. But I don't believe he had a specific recollection of if, in fact, that had been done that calendar year. And what was the timeframe of this accident? I believe the date of occurrence, Your Honors. Pre or post the 4th of July? It was July 10th, 2004. Now, there is some authority, though, that every... determination of policy or position involving the exercise of discretion is extended, this immunity. Correct. And with that comes the immunity to the principal, to the employer, because the case law is clear where there is immunity to the employee. Immunity to the employer must follow. Correct, Your Honors. And policy has generally been defined by our Supreme Court as decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of the interests. Absolutely. I believe it was the SISC or the... And who is the burden on to prove this immunity? Who has the burden to prove it? Well, it's the city's burden. But that was stricken, wasn't it? You didn't have the right to proceed on that, did you? Correct. Correct. Was this a fact? Was there a mixed fact and pleadings motion here, a 615 and a 619? I know that the city had moved for summary judgment. Your Honors, I'm simply not... But on a fact, was this issue traversed? I simply do not know, Your Honors. Not being a record at that point. Whatever light your opponent could shed on it would be, I suppose, helpful, because if the issue is not traversed in the pleadings, then the pleadings stand after the acceptance is true, which would include your affirmative defense. Is that it for now, I hope? Yes, yes. Thank you. Thank you. You'll have some time for rebuttal. I do have a photograph, and I'm not sure if any of our blow-ups got into the record, but I do have a photograph that was entered into evidence in case you want to look at it. I have a very short, concise oral argument dealing with the three issues, but since most of the questions dealt with intended and permitted, maybe I should start there. Also, don't forget immunity. I will not. Immunity is a big thing here. First of all, in terms of intended and permitted, the city of Evanston has always admitted, whether it was at the summary judgment stage in front of Judge Washington or even here in their briefs that there was an easement for Betsy Goodstein to get to her garbage bin. Where do you pick up that easement? They say specifically they're not agreeing with you. And here's where. The easement testimony in Thomas v. Cicero did not say whether it was the type of easement that was recorded, you know, the legal easement, or whether it was. Well, let's be careful. When we use easement, it is a very technical term. It's not simply a, it's a term of art and not simply part of the vernacular. But that didn't come out clearly from the Thomas case. Well, what else didn't come out clearly from the Thomas case was the word safe harbor without any citation to authority. I mean, and Thomas didn't eventually affirm the decision. It reversed the decision in that case. But the safe harbor language is nowhere supported by any kind of discussion of authority or citation to any authority in that regard. All right. Let me ask you in another way. Was this an easement or a license? Because they can both do the same thing. But one is in a state and the other isn't. Okay. My point is this. The city of Evanston has always claimed that there was no dispute that the plaintiff were permitted users of the municipal alley in question. Yes, we agree with you on that. Okay. That allows Betsy to get to her garbage can. What the record does say. Well, where is this agreement that there was an easement then? Well, my argument is that this is the usage, is the colloquialism for the easement. And because it is unclear in Thomas whether we're talking about an easement or a license or just the colloquial right to get to the garbage can, because I believe Mr. Jellick said, oh, there's an easement for people to get to use their alley. But on the other hand. There's legions of discussions in these cases that clearly point to the fact that permission, permission is not intended, although intended can obviously include permissive. The dramatic cases, the country highway cases that have no shoulders and a pedestrian walks on the highway and the Supreme Court very early on made it clear that this is not an intended use and the municipality owes no duty. So that if the pedestrian has to get to the neighbor's house by walking on the street, he may do so, but if he gets hit by a car, he better have his own insurance. Correct. Or if he steps in a pothole, there's no duty to maintain that pothole. I think that the law is clear in Illinois that alleys are treated like streets and that a pedestrian is not allowed to use a street. A pedestrian is not allowed to use an alley. There are very few exceptions. No, they're permitted to use them. They just aren't intended in case something happens. They're not intended. I apologize for my language. They're not intended to use the alleys. There are some exceptions where pedestrians are intended to use the streets, and I contend that there are some exceptions. We know of one in particular, and that's by case law, and it's actually the only one that's ever been reviewed. Several parkers and double parkers. And because of the signage and indications that there was an intent by the city that that person actually is an intended user because of the indications of that intent. Okay. And the only one we have documented is this case involving the person that has to get out from their car when they're allowed to park on the street. Correct. But that's referred to as an exception, and in that case, they talk about indicators. Now, would you say that the indication of intent here is clearly the statute? Absolutely. Is there anything else? Nothing more than the clear indication that a pedestrian has a right to walk down the sidewalk. Do you have that language or that ordinance with you by any chance? I didn't hear that. Do you have the language of that ordinance with you, or if you do, fine. Otherwise, let's just pass it. I don't. What I do have is the record from Mr. Crabtree, and this is very important because as it pertained to Betsy, she didn't have the ability to put her cans along the alleyway or the parkway, as was stated in the briefs of the City of Edmonton. But she had the ability to put it in the alley. She was required to put them in the alley because Well, she wanted her garbage picked up on any particular week. She had to have it at the property alley line by 7 o'clock in the morning. Correct. Otherwise, it was in violation of the ordinance, subject to a $25 to a $500 fine a day. What do you mean it was subject to what? The ordinance says if it wasn't there by 7 o'clock, you were subject to the violation of the garbage ordinance, which was $25 a day up to $500. For what? You mean if you don't have your garbage out by 7, I thought the penalty is that you don't get it picked up. What does she have to pay for? You're saying if she doesn't have it out by 7, she's in violation of the ordinance, subjecting her to what? I'm just saying what the ordinance says, Justice, and that is if she doesn't comply with the ordinance, she is liable or subject to a fine of $25 a day to $500. What portion of the ordinance? It's fineable. What portion of the ordinance? I think we can avoid spending more time than we need if the two of you, I take it, are eminent gentlemen and on speaking terms, get together, submit a copy of whatever ordinance material you want to this court within two days. Is that acceptable? Yes. And we can move on. Very good. Let me ask you one other question, though. I didn't find this in the record, but does the City of Evanston supply the garbage cans or those are the cans of each citizen? And if you don't know, just say you don't know. My recollection, Justice, is that two were supplied. Additional ones could be bought only from the City of Evanston for $75 a can, but I believe that the initial ones were supplied. Okay, and do you know the size of these cans or the weight of these cans or whether they're on wheels? They were on wheels and I had the dimensions of the can. They're your typical large gray cans with the top that flips up. About four foot high? Correct, on wheels. So somebody could pick up this can and put it over their fence and put it down on the slab, couldn't they? No, not that. Yes, something you've got to wheel out. You have to wheel out. And when you put garbage on it, it's pretty heavy. Correct. So you'd have to be Rambo to pick it up and put it down. Yes. But everybody can leave their garbage cans in the alley all year long. There's no requirement that anybody move them, right? Correct. The city allows every single resident to keep their garbage cans out in the alley at all times. If their property is adjacent to an alley. Right, like the plaintiff here. Like the plaintiff here. Now, does the gravel nature of this alley indicate an intent one way or the other? Whether it's paved or unpaved. Does that supply any intent by the village, or the city rather, of Evanston, that these are not really, that the alleys are not intended for people to be traipsing about? No indication one way or the other. Well, why not? There's no distinction between the paved alley or an unpaved. Well, what do you mean there's no distinction? If one is paved and one isn't, you're saying they're the same? In terms of placement of the garbage. Correct. The ordinance says that if you're adjacent to the alleyway. But does that indicate any intent that the alleyways are really not there for people to be intended users? No, that's not. The record doesn't show that. Any other intent you can think of? And since that doesn't assist you one way or the other, besides the ordinance, is there any other intent that we can glean that would lead us to the conclusion on our de novo review that the city intended every resident to be in the alley with their garbage? The custom and practice, according to the ordinance, that the city of Evanston picked up this garbage for the four years prior to the time of the fall on July the 10th. Betsy and Patsy moved into this property in March of 2004. They started to put their – that's where the cans were, so they just adopted the same principle, you know, practice, and that's where the garbage had been picked up for four years. And that includes – but the intent is that in the immediate area of the garbage, they are intended users. Correct. And there is that safe harbor to access. Is there any problem with the safe harbor language that doesn't have any authority that is in that opinion? No, I think it's axiomatic. It's like the parking situation. Correct. You have to get to your garbage somehow. Absolutely. All right. Now let me ask you about the situation involving immunity. Okay. How do you distinguish the pothole case, which seems to say that if you're a pothole filler, you've got discretion, but this guy that's running around for the city, driving his truck, deciding which alleys have to be, you know – You think Justice Garcia was wrong on that one? On Roble? Yeah. Well, I do, but since that's the law, I can live with that law. And the record is clear that there is no testimony in this record to show that Mr. Crabtree was Mr. Roble. The testimony is – But Mr. Roble was simply a guy that was filling potholes, wasn't he? No, no, no, no, no. No, he was deciding more than that? He was deciding a lot more than that. What was his deciding? The evidence in that record showed that he actually had discretion and was in the exercise of that as under the two-pronged test of heredity. What's his name? Crabtree? Yes. He didn't have any discretion at all? In the record, Crabtree only said, What I do on an annual basis, starting in the spring, weather permitting, is I start with the geographic areas, starting at the north, and I go through the various geographic areas. I get 12 weeks to complete my assignment of regrading the unpaved road. What does this mean in the Supreme Court case, then? That the 2201 extends to any employee – that's any – who holds either a position involving determination of policy or a position involving the exercise of discretion. I mean, isn't that kind of broad? Very broad. And I'm not saying, Your Honor, that just because he's fourth on the totem pole – You remember the testimony. The policy is done by the mayors and the aldermen. What policy? The policy for the city of Evanston. What about the day-to-day thing about the streets and the alleys that are filled with gravel? I didn't hear you, Your Honor. The streets, these alleys that are gravel. Are you saying that the decisions about when they get graded and everything is really coming from up at the top, and no one else has anything to say about that? There's no discretion at all? Well, since the 201 was pled as an affirmative defense, the burden is upon the defendant to bring forth a record. The court took away that, right? I understand. The court directed that out before they had any opportunity to do so. But the testimony was clear from Mr. Cramtree that what he did was he just took the annual program. Okay. He didn't have any, even in the redirect from the city. Let's talk about policy then. Okay. Policy has been, you know, clearly defined to be those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests. Now, is this not policy that was going on here about grading alleys? No, this was simply maintenance and repairs. No policy at all? No policy at all. If it is policy, then what? Well, then I think you still need the second prong inherent before you can find that the immunity is triggered. And you're saying that there's no question in this case that these alleys and whether they're regraded every two years, every four years, never involves any policy at all. Absolutely. This was just simply a standard repair. How could it not be policy to decide which things get done first in terms of cost? I mean, we have alleys here that the city has a budget, apparently, to only use gravel for the most part. So you're saying that gravel alleys require no policy decision at all. Of course they do. Why else would there be any – I mean, why else – what I don't understand is that how can you argue that deciding which alleys get done first, when you don't have the money to pave your alleys, doesn't involve any policy-making decisions at all? Is there cost or not involved here? It does involve policy, but not at the level of Mr. Crabtree. The policy was made at a different level. Mr. Crabtree just implemented, from the city manager on down, going out there and grading the alleys. And, by the way, the unpaved alleys in the city of Evanston are a small percentage of the paved alleys. This is not the bulk of the alleys in Evanston. It's a small amount. All right. So there is some decision-making going on, which ones we actually pave and which ones we use gravel on. Correct. But Mr. Crabtree is really a non-entity. Crabtree had nothing to do with it. Who did? That would be the policy-makers, which would be the mayor and the aldermen, and then that program is simply implemented according to what's in the record, as Mr. Crabtree testified to, by the city manager, down to the director, down to the supervisor, or down to the superintendent, down to him. So Evanston wasn't really prepared to present any of this, is what you're saying. That was why the judge directed it out, because they had indicated they really were going to rely on Crabtree and Crabtree alone. Correct. I mean, there were other people that could have come in and set up a Wasn't it in the 213F1s? Okay. Policy decisions really come, and tell me if I'm wrong, you know, you start off with the aldermen, the aldermen make a policy and they give it to the city manager. The city manager operates the day-to-day operation of the city of Evanston. Correct. And he also has discretion on what he does, which one comes first, which one comes second. Certainly not a guy in public works. Correct. All right. If I may read from the record, because I think this is important, back to requiring where Betsy put her garbage can. If a person has their property adjacent to an unpaved alley, the city of Evanston will only pick up recycling, yard waste, and garbage from the alley. True? True. The person does not have an alley, then it's picked up from the parkway. True. So Betsy, in this case, is reporting. Incidentally, why wouldn't the use of the parkway be an intended use on that? Because she has. Under that analysis, then use of a parkway, since it's a designated pickup spot, should carry with it the same implication of invitation that pick up from an alley or pick up from the carport carry. If I understand your question properly, Your Honor, it wasn't available to Ms. Goodstein because she had an alley. Well, would that depend, then, on an ad hoc case-by-case basis? You mean you couldn't generalize based on the ordinance itself as to whether the use was intended or simply permitted?  Well, then why wouldn't that implication equally apply to a parkway? Does it, as far as you're concerned? No, because the ordinance said if you're adjacent to the alley, that's where you have to put it. If you don't have an alley, then you can put it in the parkway. Well, if you don't have an alley and you put it in the parkway, are you then an intended user? Yes. So it depends on an ad hoc basis as to what the alternatives are. Okay. To answer that question, yes. Which is kind of an uncomfortable way to determine in these global types of situations whether the city or the municipality has a duty to repair. It has to go out and inspect each house, basically, to determine whether, with respect to that house, it should send a repair crew or not. It doesn't seem very practicable if otherwise cogent. Well, if the city of Evanston is going to designate an area where you can park along a curb, I contend that they have a duty to abort repair. Yeah, but that's done on a generic, generalized basis, where they have curbside parking. They're not going to then look to see, do you have your own private driveway or are you parked on the curb? Wouldn't your reasoning lead you to say that if, in fact, you could have brought your car up to your driveway, that that unit owner or automobile owner is not an intended user? I don't think that the duties here are determined on that specific basis, on an ad hoc, house-by-house basis. And I agree. The duty is triggered by having Betsy Goodstein be allowed to get access to where her garbage cans are legally placed. Would you generalize, if you were giving us the bright line, would you be prepared to say that any time there is necessity, there is invitation? No. Okay. I prefer to say that I do not agree that any time that there's a necessity, there's an intention. Would you be prepared to say that any time that there is a statutory or legislative mandate to utilize a property in a certain manner, that that would be an invitation? I would say yes, I would agree with that. Well, that's what you have in this case, right? Correct. Other than that, you don't have anything else, do you? I have two things. One is the statute or the ordinance. Yes. And then the other is the same indication that a pedestrian crossing an alley from one sidewalk to the other. There's no signs in that case. It's custom and practice. And the custom and practice here is the second indication, not always controlling. I think that the ordinance is more controlling. Was there necessity in the walking from the sidewalk to the other sidewalk? I mean, you have to go somewhere, right? Correct. I mean, that's how it is. Right. Right. If that's it, counsel, you might want to sum up in 30 seconds or whatever you need, and we'll let you go. There were three issues on appeal. The first one was whether Judge Washington committed error by finding as a matter of law the duty in this case. I don't believe that that was incorrect. I believe that the question of whether Betsy was an intended and permitted user is a question of law for the judge to decide, and the fact that he got it right at some point was the important thing. I don't believe that the discretionary immunity was improperly stricken. There's nothing in the record that would have set up this particular employee as having any sort of policy discretion. Most importantly in terms of the intended and permitted, given the statute, given the fact of this custom and practice and the location that this is in the alley, Betsy was in the safe harbor. She had not morphed to Khalil or by going further, she was on the way. I think it's axiomatic that if the law in this state says that a person has a safe harbor to the garbage can, that she's intended and permitted in that safe harbor. And I also believe that we're not asking for the municipality. You carry on much longer, you're going to get questions. In that case, then, I would thank the court and ask that you deny the defendant's appeal. Thank you, counsel. Thank you. And counsel and I will get you the ordinance. A couple of minutes for rebuttal if you need it. Your honors, unless you have questions, we would waive rebuttal and I also make sure that we get a copy of that ordinance as supplemental filing to your honors. That's good rebuttal. Thank you very much. That's good. Thank you. This case was very well presented, both orally and in your briefs, and will be taken under advice.